**FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GARY MARHALL ALSTON, Plaintiff, v. WILLIS PARKER; JACK SINGER; LYNDA NAVRATIL; DIRECTOR OF DIVISION OF MENTAL HEALTH SERVICES IN HIS OFFICIAL CAPACITY, Defendants. | **OPINION** Civ. No. 95-6158 (WHW) |

**Walls, Senior District Judge**

Plaintiff Gary Marshall Alston brought this suit under 42 U.S.C. § 1983 alleging that his Fourth, Fifth, and Fourteenth Amendment rights were violated by New Jersey's civil commitment law, which authorizes an individual who has been judged by two medical professionals to be a danger to himself or others to be involuntarily committed for up to 20 days before a final hearing. Defendants Willis Parker, Jack Singer, Lynda Navratil, and the Director of Mental Health Services ("Defendants") move to dismiss Alston's claims for failure to state a claim upon which relief can be granted. Pursuant to Fed. R .Civ. P. 78, Defendants' motion is decided without oral argument and granted.

**FACTS AND PROCEDURAL BACKGROUND**

On January 5, 1995, at the end of his 17-year sentence in a New Jersey prison, Alston was involuntarily committed to the Trenton Forensic Hospital, now known as the Ann Klein Forensic

**FOR PUBLICATION**

Hospital, pursuant to New Jersey's civil involuntary commitment statute.  N.J.S.A. 30:4-27.10. A court hearing was scheduled for January 25, 1995.  On February 23, 1995, Alston was transferred to Greystone Park Psychiatric Hospital.  On December 4, 1995, Alston filed two pro se complaints in the District of New Jersey alleging unlawful commitment to a psychiatric hospital and seeking the sum of $63,000,000 as damages.  The Court referred the matter to a magistrate judge, who granted Alston's application for appointment of counsel on March 19, 1996.  On August 17, 2000, New Jersey Protection and Advocacy entered an appearance as Alston's counsel.  However, on March 20, 2001, the complaint was dismissed for lack of prosecution.  On May 31, 2002, the Court vacated the earlier order of dismissal and reinstated the case upon Plaintiff's motion.

Defendants responded by filing a Fed. R. Civ. P. 12(b)(6) motion to dismiss and invoking various defenses such as defects in the pleading, witness immunity, qualified immunity, and sovereign immunity.  The Court determined that the complaint was fatally defective because Alston had not pled his 48 U.S.C. § 1983 claim with particularity.  Accordingly, on March 18, 2003, the Court dismissed the complaint with prejudice and without leave to amend.

Alston filed a notice of appeal to the United States Court of Appeals for the Third Circuit, and on April 5, 2004, the Third Circuit vacated the order dismissing the complaint and remanded the case to the District Court pursuant to its opinion in Alston v. Parker, 363 F.3d 229 (3d Cir. 2004).  The Third Circuit held that Alston's § 1983 claim should not have been considered under a heightened pleading requirement but under the more liberal standards of notice pleading

required by Rule 8.[1] Id. On June 17, 2005, Alston filed a motion to amend the complaint, and his motion was granted on July 14, 2005. On October 14, 2005, Defendants filed a motion to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). On May 25, 2006, Alston filed a second amended complaint without seeking leave of court; this Court granted Defendants' motion and ordered the second amended complaint stricken without prejudice. Before the Court now is Defendants' motion to dismiss Alston's first amended complaint.

Alston's amended complaint alleges that his constitutional rights were violated when he was held for 20 days pursuant to an ex parte order of commitment. Specifically, Alston alleges (1) violation of 42 U.S.C. § 1983, (2) violation of his Fourth Amendment right, (3) violation of his Fifth Amendment right, and (4) violation of his Fourteenth Amendment right to due process. The crux of Alston's complaint is that 20 days is an excessive period of time to be committed without review and that due process requires an immediate or speedy hearing regarding the merits of the ex parte order. Alston requests a declaratory judgment that New Jersey's civil commitment scheme is unconstitutional and monetary relief in the amount of $63,000,000.

Defendants have filed a 12(b)(6) motion to dismiss Alston's complaint for failure to state a claim on the grounds that (1) New Jersey's statutory commitment scheme is constitutional, (2) the official commissioner has absolute immunity, and (3) Parker, Singer, and Navratil are entitled to qualified immunity.

**NEW JERSEY CIVIL COMMITMENT STATUTES**

---

[1]Rule 8 of the Federal Rules of Civil Procedure requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

**FOR PUBLICATION**

In New Jersey, an action for civil commitment may be commenced either through a screening service or by an independent application based on two clinical certificates. N.J. Ct. R. 4:74-7(b). If an individual is involuntarily committed by a screening service, he may only be detained by the facility or hospital for 72 hours without court order. During the 72 hours, the screening service determines whether to institute proceedings for temporary commitment by filing a clinical certificate completed by a psychiatrist on the patient's team and a certificate executed by a physician associated with the screening service. N.J. Ct. R. 4:74(b)(1). Alternatively, if the screening service cannot be employed, proceedings for involuntary commitment may be initiated by filing an application supported by two clinical certificates. N.J. Ct. R. 4:74-7(b)(2). If involuntary commitment is initiated this way, detention is only permitted following a temporary order of commitment by the court. N.J. Ct. R. 4:74:-7(b)(2).

Upon receipt of the application for commitment, the court must immediately review it in order to determine whether there is probable cause to believe the person is in need of involuntary commitment. N.J.S.A. 30:4-27.10(f). The court may enter an order of temporary commitment only if the court finds probable cause, based on the screening or the two certificates, to believe that the person is in need of involuntary commitment. N.J.S.A. 30:4-27.10(g). That is, there must be probable cause to believe that the person is a danger to himself or others because of mental illness. N.J. Ct. R. 4:74-7(b). If the court finds probable cause to believe the person is in need of commitment, it must set a date for a final hearing within 20 days of the initial inpatient admission to the facility. N.J.S.A 30:4-27.10(h); N.J.S.A. 30:4-27.12(a); N.J. Ct. R. 4:74-7(c)(1).

**FOR PUBLICATION**

The patient is entitled to counsel, pursuant to N.J.S.A. 30:4-27.14 and N.J. Ct. R. 4:74(c)(3). Notice of the hearing must be given to the patient, his guardian, his next-of-kin, his attorney, the county adjuster and any other individual specified by the court 10 days before the date of the hearing. N.J.S.A. 30:4-27.14. The patient's treating psychiatrist must examine the patient no more than 5 days before the hearing to testify as to the clinical basis, if any, for the need for involuntary confinement. N.J.S.A. 30:4-27.11(b). The patient is entitled to file a writ of habeas corpus at any time during his confinement. N.J.S.A. 30:4-27.11c(d).

**LEGAL STANDARDS**

  **1. Standard for a Rule 12(b)(6) Motion to Dismiss**

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

While a court will accept well-plead allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegation. See Miree v. DeKalb County, Ga., 433 U.S. 25, 27 n.2 (1977). Moreover, the claimant must set forth sufficient information to outline the elements of his or her claims or to permit inferences to be drawn that these elements exist. See Fed. R. Civ.

**FOR PUBLICATION**

P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  The Court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record.  See Sentinel Trust Co. v. Universal Bonding Ins. Co., 316 F.3d 213, 216 (3d Cir. 2003); see also 5A Wright & Miller, Federal Practice & Procedure § 1357 at 299 (2d ed. 1990).

      **2. Standard for a § 1983 Claim**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights.  Section 1983 subjects to liability:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and law.

42 U.S.C. § 1983.  To establish a viable § 1983 claim, a plaintiff must demonstrate that "the conduct complained of was committed by a person acting under color of state law and that this conduct deprived the plaintiff of his rights, privileges and immunities secured by the Constitution or laws of the United States." Id.

In the analysis of a claim for relief under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) the individual interest of which he claims he was deprived is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) the procedures available to him did not provide due process of law.  Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000).  To determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided and whether it is constitutionally adequate.  The

**FOR PUBLICATION**

inquiry must examine the procedural safeguards built into the procedure of effecting the deprivation as well as any remedies for erroneous deprivation. Zimmermon v. Burch, 494 U.S. 113, 126 (1990).

**DISCUSSION**

In 1976, a New Jersey district court was presented with a nearly identical issue – "whether a hearing which may be held as long as 20 days after confinement meets constitutional requirements." Coll v. Hyland, 411 F. Supp. 905, 910 (D.N.J. 1976).[2] The court held that a hearing within 20 days of commitment comported with due process and that no preliminary hearing was required. In reaching its decision the court was guided by the Supreme Court's summary affirmance in Briggs v. Arafeh, 411 U.S. 911 (1973), of a three judge panel ruling that a statute allowing confinement for up to 45 days without a hearing was constitutional. Coll, 411 F. Supp. at 910. The district court followed the Supreme Court's direction in Hicks v. Miranda, 422 U.S. 332 (1975), that affirmances are rulings on the merits and binding upon lower courts. Id. The court concluded that the Supreme Court's ruling in Arafeh had foreclosed a successful

[2] In 1976, when Coll, was decided, N.J. Ct. R. 4:74 and N.J.S.A. 30:4-36 differed in that persons whose commitment was sought were divided into three classes based on their condition. "Class A" included individuals who did not require temporary commitment. "Class B" included those cases where the patient's condition was such that he should be placed under immediate restraint and where a court order for temporary commitment could be obtained before admission. "Class C" included cases in which immediate restraint was needed and an order could not be obtained before admission. Coll, 411 F. Supp. at 908-09. However, for all three classes, the court was required to set a hearing date no later than 20 days after the temporary order of commitment or date of admission. Id. at 909. Although the civil commitment scheme before the Court no longer divides individuals into classes, it still requires that a hearing date be set within 20 days of commitment. Consequently, Plaintiff asks this Court to rule on the same issue presented in Coll.

constitutional challenge to New Jersey's 20-day limit before a hearing. Id. at 910-11.

In reaching a decision in Coll, the district court made clear that even if it were not bound by Supreme Court precedent, it would independently find that the 20-day limit was constitutional. Id. at 911. The district court reasoned that time is necessary for medical diagnosis, court administration, and preparation for an effective hearing and that 20 days was not unreasonably long. The court also emphasized the procedural safeguards in place to prevent erroneous commitment – namely that no temporary commitment could occur without the certificates of two physicians that the patient is a danger to himself or to others. Id.

Plaintiff now asks this Court to ignore Coll and hold that New Jersey's statutory commitment scheme is unconstitutional. Plaintiff argues that the 20-day period is unconstitutional because it "is unreviewable, unnecessarily long, and violates due process standards that have evolved in the thirty years since Coll was decided." Pl. Br. 2. Plaintiff cites no binding precedent to suggest that a 20-day time period violates due process. Instead, Plaintiff submits that New Jersey's civil commitment statute for minors, R. 4:74-7A(b)(s), which limits the time period before a hearing to 14 days, is "proof of the fact that twenty days is too long." Pl. Br. 2. Plaintiff likewise references other states that hold hearings sooner and suggests that New Jersey can do the same. The thrust of Plaintiff's argument is that the rationales offered in Coll, which justified a 20-day period before a final hearing, are outdated. Plaintiff states that in light of advances in medical science, better diagnostic tools, and technological advances in court administration in the last 30 years, there is no reason that New Jersey could not be as "efficient as [other] states." Pl. Br. 6.

**FOR PUBLICATION**

However, Plaintiff mischaracterizes the issue. Neither the time frame of the civil commitment statute for minors nor the civil commitment statutes in other states have any bearing on the constitutionality of the statutory scheme before the Court. The inquiry is not whether a shorter time period is feasible but whether it is constitutionally required. As the district court noted in Coll, it is not "whether this court thinks a shorter period might be desirable or of greater benefit to the patient, but whether the time span is unconstitutional." Coll, 411 F. Supp. at 910.

As such, Plaintiff now asks this Court to ignore Coll and follow decisions of other district courts that have ordered preliminary probable cause hearings.[3] Plaintiff points to Doe v. Gallinot, 486 F. Supp. 983 (C.D. Cal. 1979), aff'd, 657 F.2d 1017 (9th Cir. 1981), where a district court ordered a probable cause hearing held within 7 days of initial detention. Plaintiff also cites Kendall v. True, 391 F. Supp. 413 (W.D.Ky. 1975), in which a panel of three federal judges held that Kentucky must provide a preliminary probable cause hearing within 72 hours of commitment in addition to a final hearing. This Court is not persuaded that it should ignore Coll based on the non-binding decisions of district courts addressing statutory schemes that differed in important respects from New Jersey's.[4] As the Second Circuit has said, "That some states have chosen to limit pre-hearing confinement to a shorter period does not mean that such a model 'is needed or is even adaptable to the needs of all states.'" Project Release v. Prevost, 722 F.2d 960, 975 (2d Cir.

[3]Plaintiff asks for an adversarial probable cause hearing rather than the ex parte probable cause review provided for in New Jersey's civil commitment statute.

[4]In Kendall, the statute at issue failed to specify the precise standards by which physicians or the courts should be governed in determining whether or not to civilly commit an individual for 60 days. 391 F. Supp. at 413. In Gallinot, there was no initial review by the court to determine if probable cause existed. 486 F. Supp. at 983.

1982) (quoting Addington v. Texas, 441 U.S. 418, 431 (1961)). While the Court finds the reasoning of Coll to be sound, it will independently consider the merits of the due process claim.

**1. Requirements of Due Process**

Plaintiff's Fifth and Fourteenth Amendment claims implicate the right to due process. The Supreme Court has recognized that involuntary commitment implicates liberty interests protected by the Fourteenth Amendment and requires due process. See Addington v. Texas, 441 U.S. 418, 425 (1981); Vitek v. Jones, 445 U.S. 480, 491-92 (1980). Due process is a flexible standard and not a "technical conception with a fixed content unrelated to time, place, and circumstances." Matthew v. Eldridge, 424 U.S. 319, 334 (1976) (internal citations omitted). The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. Id. at 333. The issue is whether an adversary hearing within 20 days of commitment is meaningful process to challenge an involuntary civil commitment.

In Project Release, the Second Circuit held that due process does not mandate ____ an automatic preliminary hearing. 722 F.2d at 974. There, the challenged statute provided for involuntary commitment for up to 60 days and emergency commitment for up to 15 days without a judicial hearing unless one was requested. In holding that the civil commitment statute comported with due process, the circuit court emphasized that the constitutionality of a civil commitment scheme should be analyzed under the totality of the circumstances. Id. at 974. Due process should "not be resolved in terms of required days, hours, or minutes, but should rather turn on the basis of the interests involved and fundamental fairness." Id. at 975 (citations omitted). The court noted that the New York statute provided numerous procedural safeguards

including notice and hearing provisions, notice to relatives and others, the availability of a judicial hearing within 5 days of demand by a patient, relative or friend, and habeas corpus relief. Id. Given the "layers of professional [and judicial] review" embodied in the statute, the Second Circuit concluded that the statute met the requirements of due process. Id.

Employing a totality of the circumstances test, this Court is of the opinion that the New Jersey civil commitment scheme has sufficient procedural safeguards to protect the liberty interest of individuals. No individual can be committed unless two doctors certify that the patient is a danger to himself or to others. N.J. Ct. R. 4:74(b)(1), (2). The individual cannot be held for more than 72 hours unless a neutral judge finds probable cause to believe that the individual is a danger to himself or to others. N.J.S.A. 30:4-27.10(f), (g). Unlike the scheme at issue in Gallinot, where the state's determination of dangerousness was unreviewed by a neutral party for 14 days, see Gallinot, 486 F. Supp. at 983, in New Jersey there is an important layer of judicial review. A patient is entitled to counsel, N.J.S.A. 30:4-27.14; N.J. Ct. R. 4:74(c)(3), and notice of the hearing must be given to the patient, his guardian, his next-of-kin, his attorney, the county adjuster, and any other individual specified by the court 10 days before the date of the hearing. N.J.S.A. 30:4-27.14. Additionally, the patient is entitled to file a writ of habeas corpus at any time during his confinement. N.J.S.A. 30:4-27.11c(d). Given the many levels of procedural safeguards and considering the time needed for doctors to make an appropriate diagnosis, for court administration, and for counsel to prepare for a hearing, 20 days is not an unreasonable time limit before a final adversarial hearing.

Plaintiff's claim that the New Jersey civil commitment scheme violates his due process

rights is without merit.

**2. Fourth Amendment Claim**

Plaintiff's complaint states that the seizure of his person under the New Jersey civil commitment scheme violated his Fourth Amendment right to be free from unreasonable seizures, although neither party briefed this claim. While civil commitment statutes are generally analyzed under the rubric of due process, courts have recognized that civil commitment is a seizure within the meaning of the Fourth Amendment. See Glass v. Mayas, 984 F.2d 55, 58 (2d Cir. 1993); Villanova v. Abrams, 972 F.2d 792, 795 (7th Cir. 1992). The relevant inquiry is whether the seizure was reasonable. Courts have generally held that temporary involuntary commitment based on probable cause does not violate the Fourth Amendment because it is "reasonable." See, e.g., McCabe v. Life-Line Ambulance Services, Inc., 77 F.3d 540 (1st Cir. 1996) (holding that a warrant was not required to enforce involuntary civil commitment orders); Villanova, 972 F.2d at 795 (holding that involuntary commitment may be made upon probable cause if there are reasons for believing that the person seized is subject to seizure under the governing legal standard); Drozdik v. City of New York, 1:01cv03300, 2003 WL 366639, *5 (S.D.N.Y. Feb. 20, 2003) (stating that an involuntary hospitalization did not violate the Fourth Amendment where there was probable cause to believe that the individual was a danger to himself or others).

Involuntary commitment pursuant to the New Jersey scheme does not violate the Fourth Amendment because commitment is based on probable cause that the person is dangerous to himself or to others. An individual cannot be committed without two certificates by medical doctors which are then subject to review by the court within 72 hours. Plaintiff's claim that New

Jersey's civil commitment scheme violates his Fourth Amendment right to be free from unreasonable seizures is without merit.

**3. Immunity**

Since the Court holds that Plaintiff failed to state a cognizable legal claim because New Jersey's civil commitment statutes are constitutional, the Court need not address Defendants' immunity defenses.

**CONCLUSION**

Alston's amended complaint is dismissed for failure to state a claim upon which relief can be granted.

Is it on this 26th day of September, 2005:

ORDERED that Defendants' motion to dismiss is GRANTED. It is further ORDERED that Plaintiff's complaint is DISMISSED without prejudice.

s/ William H. Walls

**William H. Walls, U.S.D.J.**