**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| GARY MARSHALL ALSTON, | : | |
| | : | |
| Plaintiffs, | : | **OPINION** |
| | : | |
| v. | : | Civ. No. 95-6158 (WHW) |
| | : | |
| WILLIS PARKER, ET. AL. | : | |
| | : | |
| Defendants, | : | |
| | : | |
| | : | |

**Walls, Senior District Judge**

On January 29, 2010, this Court granted the motion of Norma Davis and William Emmet

Dwyer to withdraw as attorneys for plaintiff Gary Marshall Alston. (Dkt. # 98, Letter Order.)

Mr. Alston has stated his intention to continue his case pro se. This Court finds that Mr. Alston

is incompetent to represent himself, and will not permit him to proceed pro se. The Court

appoints pro bono counsel for Mr. Alston.

### FACTUAL AND PROCEDURAL BACKGROUND

On January 5, 1995, Mr. Alston was involuntarily committed to Trenton Forensic

Hospital, now known as the Ann Klein Forensic Hospital, pursuant to New Jersey's civil

involuntary commitment statute. N.J.S.A. 30:4-27.10. On February 23, 1995, Mr. Alston was

transferred to Greystone Park Psychiatric Hospital ("Greystone"). On December 4, 1995, Alston

filed two pro se complaints in the District of New Jersey, naming as defendants several putative

employees of Greystone, alleging violations of his civil rights, and seeking $63,000,000 in

NOT FOR PUBLICATION

damages pursuant to 42 U.S.C. § 1983.  On March 19, 1996, then Magistrate Judge Joel A.

Pisano granted Mr. Alston's application for appointment of counsel.  On August 17, 2000, New

Jersey Protection and Advocacy (now known as "Disability Rights New Jersey") entered an

appearance as Mr. Alston's counsel.

Since the year 2000, this case has had a complicated procedural history.  Mr. Alston's

complaint has been dismissed for lack of prosecution and subsequently reinstated by this Court,

dismissed in its entirety for failure to state a claim and reinstated on remand from the Third

Circuit, and substantively amended three times.  Mr. Alston has amended the amount of damages

he is seeking from $63,000,000 to "[m]onetary damages in an amount to be determined."  Mr.

Alston has also added and dropped several named defendants, ultimately leaving only the

Director of the Division of Mental Health Services in His Official Capacity – a position which,

according to the representations of the New Jersey Attorney General's Office on behalf of

defendants, no longer exists and has been replaced by the position of the Assistant Commissioner

for the Division of Mental Health Services of New Jersey.  In addition, this Court has granted

defendants' motions to dismiss with respect to several of the claims in Mr. Alston's complaint,

leaving only two claims in dispute.  During this time, Mr. Alston has been represented by five

different attorneys.

On November 13, 2009, Ms. Davis and Mr. Dwyer moved to withdraw as attorneys for

Mr. Alston.  (Dkt. # 97, Motion to Withdraw as Attorney, Nov. 13, 2009).  Attached to Ms.

Davis and Mr. Dwyer's motion to withdraw was a declaration from Mr. Alston, in which he

**NOT FOR PUBLICATION**

stated his intention to continue his case pro se.  (Dkt. # 97, Decl. of Gary Marshall Alston, Nov. 9, 2009.)

On January 29, 2010, this Court granted the motion of Ms. Davis and Mr. Dwyer to withdraw.  (Dkt. # 98, Letter Order.)  However, the Court noted that, before allowing Mr. Alston to proceed pro se, it would undertake an inquiry into his competency to proceed pro se.  (Id.)  The Court requested Dr. Steven Simring and Dr. Daniel Greenfield, board-certified psychiatrists, to conduct mental competency evaluations on Mr. Alston for the purpose of determining whether he is competent to represent himself in this matter.  (Id.)  Dr. Greenfield and Dr. Simring submitted their sworn psychiatric evaluations of Mr. Alston on March 17, 2010 (Dkt. # 99 ("Greenfield Report")) and March 25, 2010 (Dkt. # 100 ("Simring Report")), respectively.  On June 30, 2010, the Court held a competency hearing at which Mr. Alston personally appeared before the Court.  Based on the Court's review of the psychiatrists' reports and its evaluation of Mr. Alston at the hearing, the Court finds that Mr. Alston is incompetent to represent himself in this matter and will not permit him to proceed pro se.[1]  The Court now turns to appointment of counsel for Mr. Alston.

---

[1] The Court notes that it does not find that Mr. Alston is generally incompetent and does not deem it necessary to appoint a guardian ad litem for Mr. Alston pursuant to Rule 17 of the Federal Rules of Civil Procedure.  Although the Court considered the possibility that Mr. Alston may require a guardian ad litem in this matter (Dkt. # 98, Letter Order, January 29, 2010), the Court has determined, based on its review of the psychiatrists' reports and its evaluation of Mr. Alston's conduct at the in personam hearing, that a guardian ad litem is not necessary.   Accordingly, the Court finds only that Mr. Alston is incompetent to represent himself and will not permit him to proceed pro se in this matter.

NOT FOR PUBLICATION

## STANDARD OF REVIEW

Civil litigants have no constitutional or statutory right to counsel.  Montgomery v. Pinchak, 294 F.3d 492, 498 (3d Cir. 2002) (citation omitted); Ray v. Robinson, 640 F.2d 474, 477 (3d Cir. 1981).  However, under 28 U.S.C. § 1915, "a court may request an attorney to represent any person unable to afford counsel."  28 U.S.C. § 1915(e)(1).  The Third Circuit has held that it is within the "broad discretion" of the district court to appoint an attorney for a civil litigant pursuant to § 1915, and the court need not limit its appointment of counsel to "exceptional circumstances."  Montgomery, 294 F.3d at 488-89, 489 n.2 (citations omitted).  See also Ray, 640 F.2d at 477-78.  The court may appoint counsel *sua sponte* at any point in the litigation.  Tabron v. Grace, 6 F.3d 147, 156 (3d Cir. 1993).

Although the Third Circuit initially declined to "establish any general standard as to when counsel should be appointed" under Section 1915, Ray, 640 F.2d at 478, it has since delineated "criteria for ascertaining the 'special circumstances' under which counsel may be appointed for an indigent litigant in a civil case."  Tabron v. Grace, 6 F.3d 147, 155 (3d Cir. 1993).  In Tabron v. Grace, the Third Circuit held that a "district court must consider as a threshold matter the merits of the plaintiff's claim."  Tabron, 6 F.3d at 155.  "If the district court determines that plaintiff's claim has arguable merit in fact and law, the court should then consider a number of additional factors that bear on the need for appointed counsel."  Id. at 155.  These factors, often known as "the Tabron factors," include:

1. the plaintiff's ability to present his or her own case;
2. the difficulty of the particular legal issues;
3. the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation;

-4-

NOT FOR PUBLICATION

4. the plaintiff's capacity to retain counsel on his or her own behalf;
5. the extent to which a case is likely to turn on credibility determinations, and;
6. whether the case will require testimony from expert witnesses.

Montgomery, 294 F.3d at 499 (citing Tabron, 6 F.3d at 155-157).  The Third Circuit has noted

that "this list of factors is not exhaustive, but should serve as a guidepost for the district courts."

Montgomery, 294 F.3d at 499 (citation omitted).

## DISCUSSION

**A. The Magistrate Judge's Initial Appointment of Counsel for Mr. Alston**

In 1996, the magistrate judge appointed counsel for Mr. Alston under § 1915 pursuant to

Mr. Alston's request.  (Dkt. # 5, Opinion by Mag. Judge Pisano, March 19, 1996.)   In

considering the threshold issue of merit, the magistrate judge noted that, while Mr. Alston's

claims were factually deficient, "a defective pleading . . . is not necessarily terminal to a case and

may in this instance be a clear sign that plaintiff is in need of legal assistance."  (Id. at 5.)  The

magistrate judge concluded that, "considering the plaintiff's psychiatric problems and the strict

standards for dismissal of a pro se complaint formulated by the Third Circuit . . . Mr. Alston's

complaint sets forth a sufficiently colorable claim to cross the Tabron threshold for consideration

for appointment of counsel."  (Id. at 6.)  The magistrate judge went on to find that, with respect

to the additional Tabron factors, Mr. Alston's confinement presented a substantial impediment to

his ability to present his case, and his presence in a psychiatric institution was likely to damage

his credibility.  (Id. at 6.)  Considering the totality of the factors, the magistrate judge concluded:

> Mr. Alston's ability to write coherently is marginal as evidenced by his rambling and
> defective complaint.  It is unlikely that he would be able to adequately present his
> case considering the complexity of his constitutional claims.  This evident inability,

-5-

**NOT FOR PUBLICATION**

> coupled with his confinement, his psychiatric problems and the other factors discussed above, make Mr. Alston a candidate for court-appointed legal assistance.

(Id. at 7.)

For reasons stated below, this Court finds that the magistrate judge's conclusions are equally applicable to Mr. Alston at the present time.

**B. This Court's Analysis of the Tabron Factors**

With respect to the threshold issue of merits, Mr. Alston states claims which have arguable merit in fact and law. The portions of his Third Amended Complaint that remain after this Court's decisions of September 26, 2006 and May 2, 2007 – namely, those pertaining to Mr. Alston's allegation that he was held for thirty-six days before obtaining a hearing, in violation of the New Jersey Civil Commitment Statute's twenty-day limit – present colorable claims for relief. Having found Mr. Alston's claims to meet the threshold merits requirement, the Court now considers the Tabron factors.

*1. The Plaintiff's Ability to Present His Own Case*

In evaluating a plaintiff's ability to present his own case, a court may consider "the plaintiff's education, literacy, prior work experience, and prior litigation experience," as well as "the plaintiff's ability to understand English" and "the restraints placed upon him or her by confinement." Tabron, 6 F.3d at 156. As explained later, the Court finds that, although Mr. Alston appears to be a fairly lucid and composed individual, his ability to present his own case is severely impaired by several factors, including his mental illness, his lack of education and illiteracy, and his confinement.

-6-

NOT FOR PUBLICATION

Mr. Alston has a history of mental illness; he has been diagnosed with chronic paranoid schizophrenia and antisocial personality disorder.  (Greenfield Report 4, 16; Simring Report 4.) In 1995, Mr. Alston was involuntarily committed pursuant to New Jersey's involuntary commitment statute, Alston v. Parker, Civ. No. 95-6158, 2007 WL 1349303, at *1 (D.N.J. May 2, 2007), and, save for a one-year period from 1998-1999, has remained in New Jersey state psychiatric hospitals since then (Greenfield Report 3; Simring Report 2, 4).  Although Mr. Alston's mental state has improved through psychiatric treatment (Greenfield Report 4; Simring Report 4-5), it appears that he is unreliable in relating his own background and personal history, and exhibits disorganized thinking and speaking (Greenfield Report 10, 12-15), as well as some paranoia (Greenfield Report 12; Simring Report 3).

Mr. Alston has not completed any education beyond the ninth grade and has stated that he cannot read – a statement which Dr. Greenfield believes to be accurate.  (Greenfield Report 11.) See Pearson v. Agawar, Civ. No. 09-2786, 2009 WL 2496884, at *4 (D.N.J. Aug. 13, 2009) (finding that illiteracy prevents a plaintiff from being able to present his own case); Collins v. Roth, Civ. No. 07-5637, 2008 WL 4661609, at *3 (D.N.J. Oct. 17, 2008) (same).  In addition, the Court notes that Mr. Alston's exhibits some cognitive deficits, in that his scores on standardized cognitive screening tests, while not indicative of severe cognitive impairment, were low and suggest that he had trouble comprehending the tests.  (Greenfield Report 13.)

Mr. Alston has himself expressed a lack of confidence in his ability to present his case. In response to a question from Dr. Greenfield regarding whether he is competent to be his own lawyer in the matter, Mr. Alston responded:

NOT FOR PUBLICATION

> No, no way, of course not.  I have to have someone write things for me.  They wrote the Affidavit for me to be pro se.  I've been pro se before, but I've always needed a lawyer.  I can't write those things.  I get rid of them, the lawyers, because they don't understand.  But I need a lawyer.  I'm not competent to do it, I'd drive the judge crazy.

(Greenfield Report 19.)  Dr. Greenfield stated that, following this comment from Mr. Alston, "it was [his] impression that Mr. Alston was becoming increasingly confused about what he felt might be required to represent himself competently in the above-referenced matter."  (Greenfield Report 19.)   Mr. Alston's statements to Dr. Greenfield appear to be consistent with his statements to Dr. Simring.  Dr. Simring related the following from his interview with Mr. Alston:

> Mr. Alston told me he has no particular desire to represent himself.  However, he has come to the conclusion that outside lawyers will no longer do anything for him, so he has no choice but to go pro se if he wants to pursue his litigation.  He readily acknowledges his lack of legal sophistication, and said that we would be more than happy to have a standby attorney "sitting in the chair next to me."

(Simring Report 5.)

Finally, Mr. Alston is confined to a psychiatric hospital, and the physical and social restraints resulting from this confinement are likely to further impede his already compromised ability to present his case.

In sum, given Mr. Alston's mental illness, his lack of education and illiteracy, his own lack of confidence in his ability to present his case, and his confinement to Greystone, the Court finds that Mr. Alston is unable to present his own case, and such weighs heavily in favor of appointing counsel to represent him.

NOT FOR PUBLICATION

*2. The Difficulty of the Particular Legal Issues*

The Third Circuit has stated that a court "should be more inclined to appoint counsel if the legal issues are complex." Tabron, 6 F.3d at 156.  Although the legal issues in this case have been made somewhat less complicated by the Court's dismissal of some of Mr. Alston's claims (see Dkt. # 55, Op., Sept. 26, 2008; Dkt. # 88, Op., May 2, 2007), his remaining constitutional claims – which include alleged violations of his Fourth and Fifth Amendment rights based on alleged violations of New Jersey statutory law – are fairly sophisticated claims that would present a considerable degree of difficulty to an average pro se litigant, to say nothing of a pro se litigant such as Mr. Alston, who is unable to present his case.  The Court holds that the particular legal issues in this case are sufficiently difficult to weigh in favor of appointment of counsel.

*3. The Degree to Which Factual Investigation Will Be Necessary and the Ability of the Plaintiff to Pursue Investigation*

The Third Circuit has noted that a court may "consider the extent to which prisoners and others suffering confinement may face problems in pursuing their claims." Tabron, 6 F.3d at 156.  It is unclear how much factual investigation has been conducted and how much more will be necessary in this case, but the Court notes that the parties – through Mr. Alston's former counsel, Ms. Davis – advised the Court in April of 2008 that they were near the completion of discovery.  (Dkt. # 90, Letter from Counsel, April 22, 2008.)   However, the case has not yet proceeded to summary judgment or trial, so there may yet be a need for further factual investigation to substantiate Mr. Alston's claims that he was held in violation of New Jersey's Civil Commitment Statute, and Mr. Alston's confinement at Greystone would be a significant

-9-

NOT FOR PUBLICATION

impediment to his ability to pursue that investigation.  The Court finds that this factor weighs in favor of appointing counsel to represent Mr. Alston.

     *4. The Plaintiff's Capacity to Retain Counsel on His Own Behalf*

     The Third Circuit has stated that, "[i]f counsel is easily attainable and affordable by the litigant, but the plaintiff simply has made no effort to retain an attorney, then counsel should not be appointed by the court."  Tabron, 6 F.3d at 157 n.5.  There is no indication that counsel is attainable or affordable by Mr. Alston.  On the contrary, it is clear that Mr. Alston cannot afford counsel: when filing his suit in 1995 *in forma pauperis* under 28 U.S.C. § 1915, Mr. Alston represented that he had no money and no assets, and there is no indication that he has acquired any in the fifteen years since then, during which time he has been almost uninterruptedly confined to a psychiatric hospital.  It also seems clear that counsel – even pro bono counsel – is not "attainable" for Mr. Alston, as his prolonged confinement would likely make it extremely difficult, if not impossible, for him to have contact with attorneys who would be willing to take his case.  The Court finds that Mr. Alston is unable to retain counsel on his own behalf and that this factor weighs strongly in favor of appointment of counsel by the Court.

     *5. The Extent to Which the Case is Likely to Turn on Credibility Determinations*

     Credibility determinations are likely to be important in this case.  Mr. Alston's remaining claims are based on his allegations that he was held for sixteen days beyond the time period permitted by the New Jersey Civil Commitment Statute for pre-hearing confinement, and the success of his claims may hinge on his ability to convince a factfinder of his version of these alleged facts, and possibly on the ability of state employees to convince a factfinder of an

-10-

**NOT FOR PUBLICATION**

opposing version of the facts.  Moreover, Mr. Alston's credibility in attempting to convince a

factfinder may be damaged by his history of mental illness, his cognitive deficits, and his

prolonged stay in a psychiatric institution.  The Court finds that this factor weighs in favor of

appointment of counsel.

> *6. Whether the Case Will Require Testimony from Expert Witnesses*

It does not appear especially likely that this case will involve expert witnesses, as there do

not appear to be scientific or technical issues that will require explanatory expert testimony.

> *Totality of Tabron Factors*

In sum, the threshold merit requirement of Tabron is satisfied, and most of the Tabron

factors weigh in favor of appointment of counsel for Mr. Alston.  The Court will appoint counsel

for Mr. Alston pursuant to 28 U.S.C. § 1915(e).

**C. Appointment of Counsel**

The Court appoints the law firm of Graham Curtin PA as counsel for Mr. Alston, with

Mr. James O'Hara and Mr. Joseph Brennan of Graham Curtin acting as Mr. Alston's pro bono

attorneys.

The Court notes that, since the magistrate judge's order granting appointment of counsel

to Mr. Alston, Mr. Alston has had five different attorneys.  Mr. Alston has stated that he "get[s]

rid of them, the lawyers, because they don't understand" (Greenfield Report 19), and that he feels

that he "ha[s] no choice" but to represent himself.  (Tr. 14-15; Simring Report 5.)  The Court

believes and trusts that Mr. Alston's newly-appointed attorneys will understand his case and

represent him competently.  The Court expects and urges Mr. Alston to work with his court-

**NOT FOR PUBLICATION**

appointed counsel to move this case forward and to bring it to a conclusion after nearly fifteen

years of litigation.

**CONCLUSION**

It is on this 16th day of August, 2010:

ORDERED that Plaintiff Gary Marshall Alston's request to proceed pro se is DENIED;

ORDERED that James O'Hara and Joseph Brennan of Graham Curtin PA are appointed

pro bono counsel for Gary Marshall Alston; and

ORDERED that Greystone Park Psychiatric Hospital shall allow Gary Marshall Alston's

pro bono attorneys to meet and confer with Mr. Alston, and, when possible, shall allow them

access to relevant records pertaining to Mr. Alston.

<u>s/William H. Walls</u>
United States Senior District Judge

cc:    Gary Marshall Alston, Greystone Park Psychiatric Hospital
       Jeffry Nurenberg, Medical Director, Greystone Park Psychiatric Hospital